UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LX PANTOS AMERICA, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>AGX FREIGHT LOGISTICS, LLC and TT CLUB MUTUAL INSURANCE LTD.,<br><br>    Defendants. | Civil Action No. 25-15988 (JXN)(AME)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendant TT Club Mutual Insurance, Ltd.'s ("TT Club") motion to compel arbitration. (ECF No. 20.) Plaintiff LX Pantos America, Inc. ("Pantos") opposed (ECF No. 23), and TT Club replied (ECF No. 26). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, TT Club's motion to compel arbitration is **GRANTED**.

I.  **BACKGROUND**

  A.  **Statement of Facts**

Pantos is a company "specializing in international freight forwarding and domestic supply chain solutions." (Compl. ¶¶ 1, 8, ECF No. 1.) Defendant AGX Freight Logistics, LLC ("AGX") "provides transportation brokerage services for general commodities in interstate commerce." (*Id.* ¶ 10.) Both Pantos and AGX are authorized transportation "brokers," as that term is defined in 49

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

U.S.C. § 13102(2).[2] (*Id.* ¶¶ 9–10.) TT Club insures transportation and logistics companies, including AGX. (*Id.* ¶ 11.)

In April 2020, Pantos and AGX entered a Broker Transportation Agreement ("Agreement") wherein AGX would arrange "for transportation of general commodities." (*Id.* ¶ 12.) Pantos entrusted AGX with goods; AGX, in turn, agreed to "promptly and efficiently arrange for engaged motor carriers to receive, transport and deliver [those goods] safely and with reasonable dispatch and without delay." (*Id.* ¶ 13.) Under the Agreement, AGX assumed "the same liability as that of a common carrier for full actual loss" under the Carmack Amendment, 49 U.S.C. § 14706, and its related regulations. (*Id.* ¶ 18.) The Agreement also required AGX to include Pantos as a "Loss Payee" on AGX's Contingent Cargo Liability insurance policy ("Policy") with TT Club. (*Id.* ¶¶ 22–24.) As an additional insured under the Policy, Pantos is "entitled to insurance coverage for all covered claims and losses." (*Id.* ¶ 26.)

The Policy's cover page states "All disputes arising out of or in connection with this Policy are subject to arbitration in London in accordance with English law." (TT Club Ex. 2 ("Policy") at *2,[3] ECF No. 20-4.) The Policy also provides:

> Our insurance, and any other contract between you and us, is subject to English law. Every insurance which we provide and the rights and obligations of you (or anyone else) and us arising out of or in connection with the insurance is subject to and will be construed in accordance with English law.

(*Id.* at *63.) And the Policy requires that:

> The courts of England will have exclusive jurisdiction to hear, settle or determine any dispute, controversy or claim (including any non contractual dispute, controversy or claim) arising out of or in connection with our insurance or other contract between you and us, including any question regarding its existence,

---

[2] A "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

[3] Pincites preceded by an asterisk (*) use ECF pagination.

validity, formation or termination. For these purposes, we and you irrevocably submit to the jurisdiction of the English courts.

(*Id.*)

Through the Agreement, AGX arranged "hundreds" of shipments for Pantos in 2024. (*Id.* ¶ 27.) Most arrived at their intended destinations; twenty-five did not. (*Id.* ¶ 29.) The lost shipments are worth $3,472,073.70. (*Id.* ¶ 34.)

Pantos filed formal freight claims against AGX "in accordance with the Agreement, the Carmack Amendment, and 49 C.F.R. § 370.3." (*Id.* ¶ 32.) AGX gave TT Club notice of Pantos's claims. (*Id.* ¶ 36.) However, neither AGX nor TT Club paid Pantos for the lost shipments. (*Id.* ¶¶ 35, 37.)

### B.       Procedural History

Plaintiff filed this lawsuit against AGX and TT Club (collectively, "Defendants") on September 25, 2025. (*See id.*) The Complaint included a Carmack Amendment claim against AGX and a breach of contract claim against TT Club. (*Id.*)

On November 26, 2025, TT Club moved to compel arbitration in London. (*See* Mot. to Compel, ECF No. 20.) TT Club argues that, as an "additional insured" under the Policy, Pantos agreed to arbitrate all disputes arising from the Policy in London. (*See* TT Club Moving Br., ECF No. 20-1.) Because the coverage dispute between Pantos and TT Club arises from the Policy, TT Club argues the Court should submit the matter to arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08. (*See generally id.*)

Pantos opposed, arguing that its breach of contract claim against TT Club "is rendered dispositive by, and cannot be adjudicated independently of" its Carmack Amendment against AGX. (Pantos Opp'n at 1, ECF No. 23.) According to Pantos, "all claims pursuant to domestic

3

interstate shipping," i.e., Carmack Amendment claims, "must be brought only in federal or state courts in the United States, absent the parties' express consent in writing to circumvent its procedures." (*Id.* at 8.) Because Pantos did not expressly consent to circumvent the Carmack Amendment's procedures and submit its claim to arbitration, Pantos argues the Court should deny TT Club's motion. (*Id.*) Pantos asserts that, even if the Carmack Amendment did not bar arbitration, the dispute did not arise out of the Policy and therefore did not fall within the Policy's arbitration clause. (*Id.* at 9–13.)

TT Club, in reply, contends that Pantos conflates the breach of contract claim against TT Club with the Carmack Amendment claim against AGX. (TT Club Reply at 5–9, ECF No. 26.) According to TT Club, the Carmack Amendment claim against AGX is not arbitrable, but the breach of contract claim against TT Club is. (*Id.*) TT Club argues that the breach of contract claim is separate from the Carmack Amendment claim, it falls within the Policy, and therefore, it should be submitted to arbitration. (*Id.*)

The Court administratively terminated TT Club's motion pending supplemental submissions about whether the Court has subject matter jurisdiction. Pantos submitted a supplemental brief. (*See* Pl.'s Supp. Br., ECF No. 30.) Having reviewed Pantos's supplemental brief, the Court concludes it has subject matter jurisdiction. 28 U.S.C. § 1337(a) grants federal courts jurisdiction over Carmack Amendment claims "if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs."[4] Each bill of lading at issue exceeds $10,000. (*See* Pl.'s Supp. Br. at 2–3.)

Accordingly, this matter is now fully briefed and ripe for review.

---

[4] "A bill of lading is a transportation contract between a shipper/consignor (i.e., a seller of goods) and a carrier." *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003).

## II.    LEGAL STANDARD

The Convention governs arbitration clauses in international contracts. *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449–50 (3d Cir. 2003). The FAA implements the Convention. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009); *see also* 9 U.S.C. §§ 201–08. "Pursuant to the Convention, to which the United States and the United Kingdom are signatories, a district court must order arbitration when confronted with a dispute that is covered by the arbitration provision." *Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n., Ltd.*, 108 F. App'x 35, 38 (3d Cir. 2004). An agreement falls within the Convention if it:

> (1) is an agreement in writing to arbitrate the subject of a dispute, (2) provides for arbitration in the territory of a signatory to the Convention, (3) arises out of a legal relationship, contractual or not, that is considered commercial, and (4) is a legal relationship between parties at least one of which is not an American citizen, or at least is a legal relationship bearing some reasonable relation with one or more foreign states.

*Century Indem. Co.*, 584 F.3d at 523 n.8.

The FAA's "strong federal policy favoring arbitration applies with special force in the field of international commerce." *Id.* at 523. Yet the Court may not automatically grant a motion to compel arbitration. *Id.* Rather, the Court first "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* "This determination applies equally in domestic and international arbitration contexts." *Id.*

When it is apparent from "the face of a complaint, and documents relied upon in the complaint, that . . . a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (alteration in original) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)). Where,

however, "the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue," the Court analyzes the motion to compel under the Rule 56 standard. *Guidotti*, 716 F.3d at 774.

## III.   **DISCUSSION**

### A.   **The Policy Falls Within the Convention**

The parties do not dispute that the Policy falls within the Convention. For thoroughness, the Court notes that (1) the Policy is an agreement with an arbitration clause covering all disputes arising out of the Policy; (2) the Policy provides for arbitration in London; (3) the United Kingdom is a signatory to the Convention, *Flexi-Van Leasing*, 108 F. App'x at 38; (4) the Policy created a commercial legal relationship, *see Century Indem. Co.*, 584 F.3d at 520 n.5 (finding that retrocessional insurance agreements formed commercial legal relationship); and (5) the Policy is between TT Club, a non-citizen, and Pantos, an "additional insured" under the Policy. The Court, accordingly, concludes the Policy falls within the Convention.

### B.   **The Carmack Amendment Does Not Preclude Arbitration**

Pantos and TT Club entered a valid arbitration agreement. The Policy names Pantos as a "Customer Joint Assured." (*See* Policy at *8.) Under the Policy, "[t]here is only one assured . . . as designated in the certificate. Anyone else insured under the same [P]olicy is a joint assured." (*Id.* at *57.) The Policy subjects a joint assured "to all the terms of the [Policy]." (*Id.* at *9.) And the Policy states that: "All disputes arising out of or in connection with this Policy are subject to arbitration in London in accordance with English law." (*Id.* at *2.) Accordingly, Pantos, as a Joint Assured under the Policy, is subject to all the Policy's terms, including the arbitration clause.[5]

---

[5] Even if a Joint Assured was not a party to the Policy, "a third-party beneficiary is bound by the terms of a contract where its claim arises out of that contract." *Flexi-Van Leasing*, 108 F. App'x at 40.

Pantos argues the Carmack Amendment renders the Policy's arbitration clause ineffective against Pantos's claims. The Carmack Amendment establishes "a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Usinor Steel Corp. v. Norfolk S. Corp.*, 308 F. Supp. 2d 510, 517 (D.N.J. 2004) (quoting *AIDA Dayton Techs. Corp. v. I.T.O. Corp. of Balt.*, 137 F. Supp. 2d 637, 641 (D. Md. 2001)). "The Carmack Amendment's operation is relatively straightforward." *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014). An interstate carrier "is strictly liable for damages up to 'the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) [certain intermediary carriers].'" *Id.* (quoting 49 U.S.C. § 14706(a)(1)). "Shippers may bring a federal private cause of action directly under the Carmack Amendment against a carrier for damages." *Id.* (citing 49 U.S.C. § 14706(d)). To state a *prima facie* Carmack Amendment claim, the shipper must show: "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages." *Paper Magic Grp.*, 318 F.3d at 461 (quoting *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001)).

"For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping." *Certain Underwriters*, 762 F.3d at 335. Indeed, the Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments." *Id.* at 336 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)). The Carmack Amendment, therefore, supplies the "exclusive cause of action for interstate-shipping contract and tort claims alleging loss or damage to property." *Id.* (cleaned up) (quoting *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688–90 (9th Cir. 2007)).

7

The Carmack Amendment "also contains 'special venue' provisions that apply to claims against carriers, and displace the general federal venue provision." *United Granite & Quartz, Inc. v. Emuro Transp., LLC*, No. 23-1673, 2023 WL 8868780, at *4 (D.N.J. Dec. 22, 2023) (citing 49 U.S.C. § 11706(d)(1)). A Carmack Amendment claim must be brought in the district "through which the defendant carrier operates" or "in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 14706(d)(1)–(2).

The Carmack Amendment, however, allows carriers and shippers to opt-out of the statute's default rules:

> If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies.

49 U.S.C. § 14101(b)(1). "Section 14101 essentially permits parties to avoid liability under the Carmack Amendment when they 'in writing, expressly waive any or all rights' thereunder." *Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, No. 10-2023, 2016 WL 4472949, at *2 (D.N.J. Aug. 22, 2016) (citation omitted), *aff'd,* 718 F. App'x 110 (3d Cir. 2017).

Taking these provisions together, Pantos argues the parties may only arbitrate a Carmack Amendment claim if the Policy's arbitration clause *expressly* waives the parties' rights under the Carmack Amendment. (*See* Pantos Opp'n at 8–9.) Because the Policy's arbitration clause does not expressly waive the parties' rights to bring a Carmack Amendment claim in federal court, Pantos concludes the Policy's arbitration clause does not apply to the claim against TT Club.

But Pantos skips past a threshold question. The Carmack Amendment "does not preempt causes of action against the shipper or other non-carrier." *Bunis v. Masha Mobile Moving & Storage, LCC*, 674 F. Supp. 3d 186, 193 (E.D. Pa. 2023) (citation omitted). The Carmack

Amendment "only preempts claims for damage caused by the carrier, and does not preclude suit against non-carrier entities to the extent that they are liable under other law." *Id.* (citation omitted). In determining if a party is a carrier, "the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 286–87 (3d Cir. 2019). "If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation." *Id.* at 287. "Conversely, if an entity merely agrees to locate and hire a third party to transport the goods, then it is acting as a broker." *Id.* "Courts examine how the party held itself out, as well as the understanding among the parties." *United Granite & Quartz*, 2023 WL 8868780, at *5 (citations omitted).

Here, it is undisputed that TT Club is an *insurer*, not a *carrier*. (*See* Compl. ¶¶ 22–26 (describing TT Club as an insurer); Pantos Opp'n at 2–3 (same).) TT Club did not assume responsibility for delivering Pantos's cargo. Nor did TT Club hold itself out as responsible for Pantos's shipments. Likewise, the Agreement and the Policy both reflect that TT Club bore no responsibility for delivering Pantos's cargo. The Agreement (to which TT Club was not a party) does not impose any duties on TT Club for delivering or handling cargo. (*See* Compl. Ex. 1 ("Agreement") at 16, ECF No. 1-1.) The Policy does not assign TT Club any responsibility in delivering Pantos's cargo. Rather, the Policy states: "We insure *you* for claims for physical loss of or damage to cargo arising from *your* service as a transportation broker where *you* have arranged for the transportation of the cargo *by a motor carrier or rail carrier*." (*See* Policy at *5 (emphasis added).) The Court, therefore, readily finds TT Club was not a carrier. Because the Carmack Amendment "does not preempt causes of action against . . . [a] non-carrier," *Bunis*, 674 F. Supp. 3d at 193, the Carmack Amendment does not subsume Pantos's breach of contract claim against

9

TT Club.[6] The Court, accordingly, finds the Policy's arbitration clause applies to Pantos's claim against TT Club.

### C.      The Claim Against TT Club Falls Within the Policy's Arbitration Clause

The Policy states: "All disputes arising out of or in connection with this Policy are subject to arbitration in London in accordance with English law." (Policy at *2.) "Courts have generally read the terms 'arising out of' or 'relating to' a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract." *Griffin v. Burlington Volkswagen, Inc.*, 411 N.J. Super. 515, 518 (App. Div. 2010) (quoting *Angrisani v. Fin. Tech. Ventures, L.P.*, 402 N.J. Super. 138, 149 (App. Div. 2008)). "Arbitration provisions using such expansive language are construed to require arbitration of statutory claims such as alleged civil rights violations and common law torts." *Id.* at 519.

Pantos sued TT Club for "failing and refusing full and complete coverage for the Lost Shipments in the total amount of the loss." (Compl. ¶ 50.) On its face, Pantos's claim directly arises from and relates to the Policy.

Pantos argues that, under New Jersey law, broad arbitration clauses do not cover statutory claims, and Pantos's claim against TT Club is "statutory." (Pantos Opp'n at 9–13.) This argument misses the mark. To be sure, arbitration clauses, like any contractual waiver of rights, "must be clear and unambiguous." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 444 (2014). And New Jersey courts have held that a clause requiring "arbitration of 'any controversy arising out of, or relating to, this Agreement or the breach thereof' does not definitively indicate the parties intended to waive statutory rights." *Est. of Bender v. BQ Basements & Concrete*, No. A-0078-24,

---

[6] Pantos argues, in cursory fashion, that the Carmack Amendment applies because Pantos's breach of contract claim against TT Club "is a mere extension" of its Carmack Amendment claim against AGX. (Pantos Opp'n at 9.) But the Carmack Amendment "*only* preempts claims for damage caused by the carrier." *Bunis*, 674 F. Supp. 3d at 193 (emphasis added). TT Club is not a carrier.

2025 WL 2115506, at *9 (N.J. Super. Ct. App. Div. July 29, 2025). But statutory claims "'founded on facts no different than [related] breach of contract claims' are subject to arbitration, even if the ADR provision does not explicitly reference a waiver of 'statutory claims' or 'statutory rights.'" *Id.* (quoting *Caruso v. Ravenswood Devs., Inc.*, 337 N.J. Super. 499, 508 (App. Div. 2001)).

Pantos's breach of contract claim against TT Club is plainly not statutory. It arises solely and exclusively from Pantos's insurance contract with TT Club. Pantos does not allege TT Club satisfied any of the elements of a Carmack Amendment claim. Nor does Pantos even seek relief against TT Club under the Carmack Amendment. At most, Pantos's breach of contract claim against TT Club and Carmack Amendment claim against AGX arise from the same incident. But that is not a barrier to arbitration. *See id.* The Court, therefore, concludes Pantos's claim against TT Club falls within the Policy's arbitration clause. And so, TT Club's motion to compel arbitration is **granted**.

### D.      The Court Stays Proceedings Against TT Club, But Not AGX

Having granted TT Club's motion to compel arbitration, the Court considers whether, and to what extent, it must stay the action. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

In other words, after the Court submits a claim to arbitration, the Court *must* stay proceedings as to that claim. *See Gov't Emps. Ins. Co. v. Elkholy*, No. 21-16255, 2024 WL 5202550, at *4 (D.N.J. Dec. 23, 2024) (noting that, under § 3 "issues within the scope of an arbitration agreement shall

11

be referred to arbitration, and that trial *must be* stayed pending arbitration of those issues." (internal citation omitted)).

But § 3 requires a stay only as to a party who "committed itself to arbitrate one or more issues in suit." *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 715 (3d Cir. 2009). § 3 does not "mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court." *Id.* at 711. "Stated differently, in a suit where some parties have agreed to arbitrate their claims and others have not agreed to arbitrate their claims, a [§] 3 [m]andatory [s]tay does not apply to the latter parties." *Elkholy*, 2024 WL 5202550, at *4.

The Court, however, may nonetheless stay a non-arbitrable claim "as a matter of its discretion to control its docket." *Mendez*, 553 F.3d at 712 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, n.23 (1983)). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In granting a discretionary stay, courts consider, among other factors, "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set." *Elkholy*, 2024 WL 5202550, at *5 (quoting *Eagle View Tech., Inc. v. Xactware Sols., Inc.*, No. 15-7025, 2016 WL 7165695, at *3 (D.N.J. Dec. 7, 2016)). The party seeking a stay has the burden to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

Here, Pantos agreed to arbitrate its claim against TT Club. Accordingly, § 3 requires that Pantos's claim against TT Club is **stayed** pending arbitration.

12

Pantos did not agree to arbitrate its claim against AGX, and § 3 does not apply. TT Club does not explain how it would suffer harm from the non-arbitrable claims against AGX going forward. Nor does the Court detect any such harm. The outcome of the claim against AGX may bear on the outcome of the claim against TT Club. Forcing AGX to wait on the results of a foreign arbitration to which it is not a party could unduly prejudice AGX and Pantos more than it would inconvenience TT Club. Likewise, if the claim against AGX could bear on the claim against TT Club, a stay of the claim against AGX could *complicate* the issues. Plus, this case has not moved past the motion to dismiss stage. The Court, accordingly, **declines** to stay the claim against AGX at this time.

## IV.    CONCLUSION

For the foregoing reasons, TT Club's motion to compel arbitration (ECF No. 20) is **GRANTED**, and proceedings against TT Club are **STAYED** pending arbitration. An appropriate Order accompanies this Opinion.

DATED: 7/23/2026

_____
JULIEN XAVIER NEALS
United States District Judge